IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ABRAHAM VASQUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. C-05-506 |
| | § | |
| JIM WELLS COUNTY, | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On this day came on to be considered Defendant Jim Wells County's Motion for Summary Judgment (D.E. 31). For the reasons discussed below, Defendant's Motion is GRANTED.

**I.   JURISDICTION**

The Court has federal question jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

**II.   BACKGROUND**

On September 13, 2005, Plaintiff Abraham Vasquez ("Plaintiff") filed suit in Texas state court against Defendant Jim Wells County ("the County"), as well as the City of Alice and the Alice Police Department. (D.E. 1 at ¶ 1.) On October 6, 2005, the County removed the case to this Court, alleging that the Court had federal question jurisdiction over the action. (D.E. 1 at ¶ 2.) Plaintiff filed a motion to remand the case based on alleged procedural defects in the removal, which this Court subsequently denied. (See

D.E. 7, 17.)  On May 6, 2006, the Court granted Plaintiff leave to file an amended complaint.  (D.E. 22.)  In his amended complaint, Plaintiff claimed that the County failed to provide for his serious medical needs and thus violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution.  (Pl.'s Am. Compl. at ¶¶ 22, 36-37.)  Plaintiff also asserted a negligence claim against the County.  (Pl.'s Am. Compl. at ¶¶ 31-34.)

On June 20, 2006, the County filed a motion for summary judgment against Plaintiff on both of his claims.  (D.E. 31.)  On July 11, 2006, Plaintiff filed a "Motion for Continuance and Response" to the County's motion for summary judgment.  (D.E. 35.)  In the "Motion for Continuance and Response," Plaintiff requested additional time to respond to the motion for summary judgment in order to depose three witnesses.  (D.E. 35 at ¶ 12.)  On July 20, 2006, this Court struck Plaintiff's "Motion for a Continuance and Response" because the pleading was not in the proper format for a response to a motion for summary judgment, and the exhibits were not tabbed in accordance with the general order entered in the case.  (See D.E. 38, 15 at ¶ V.)  On July 25, 2006, Plaintiff filed an amended "Motion for Continuance and Response" to the motion for summary judgment.  (D.E. 39.)  On July 27, 2006, this Court denied the motion for continuance on the ground that the motion did not give any indication as to why Plaintiff had not already taken the depositions referred to in the motion.  (D.E. 42.)  Plaintiff did not file an amended motion explaining why he had failed to take the

depositions.  Therefore, this Court took the County's motion under consideration, along with the Plaintiff's response (D.E. 39).  The following facts are not in dispute:

On September 27, 2003, Plaintiff was driving his truck in Alice, Texas, when he passed out and struck a parked vehicle, resulting in a serious wreck.  (Vasquez Affidavit ("VA") at 1; Def.'s Ex. ("DEX") 1 at 17-19.)  Police officers from the City of Alice responded to the scene and found Plaintiff's truck with "heavy front end damage."  (DEX 1 at 16; VA at 1.)  The police officers also located Plaintiff and spoke to him.  (DEX 1 at 16.) During the course of the conversation, Officer Michael Diaz began to suspect that Plaintiff was intoxicated and had him perform several field sobriety tests.  (DEX 1 at 16.)  When Plaintiff was unable to perform the tests to the officer's satisfaction, the officer placed Plaintiff under arrest for driving while intoxicated and transported him to the Alice Police Department.  (DEX 1 at 16.) After Plaintiff refused to submit to an "intoxilizer" test, Officer Diaz took him to the Jim Wells County jail.  (DEX 1 at 16.)  At around 3:24 AM, County officers booked Plaintiff at the jail.  (DEX 2 at 1-5.)  As part of the booking process, the County officers performed a basic medical evaluation of Plaintiff.  (DEX 2 at 2-3.) The officers noted that Plaintiff did not "have any visible signs of trauma, illness, obvious pain, or bleeding, requiring immediate medical attention."  (DEX 2 at 2.)  The officers also asked Plaintiff whether he had "any other medical problem [the County]

should know about," and the Plaintiff responded that he did not. (DEX 2 at 2.)  Plaintiff was then placed in a cell.

Sometime later, Plaintiff woke up in the cell and felt a pain in his abdomen that began to intensify.  (VA at 1-2; Vasquez Depo. ("VD") at 27-28, 105-06.)  At this time, Plaintiff claims that he began pressing the "buzzer" in his jail cell and asking the guard for medical attention.  (See VD at 28, 105-06; VA at 1-2.)  The County, however, claims that Plaintiff never requested medical attention.  (DEX 4 at 2.)  In any case, both parties agree that the County did not provide Plaintiff with any medical care during his time at the jail.  After an initial appearance before a magistrate, Plaintiff was released on his own recognizance at approximately 6:30 AM.  (DEX 4.)  Plaintiff walked home and his sister took him to the hospital. (VD at 28.)  At the hospital, Plaintiff's doctors were forced to remove part of Plaintiff's colon as a result of his internal injuries from the car accident.  (See VA at 2; VD at 22, 102-03, 109-10.)  Plaintiff's criminal charges were ultimately dismissed and he was not convicted for driving while intoxicated. (VA at 2.)

**III. DISCUSSION**

    **A.**    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of [the record] which [it] believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf

-5-

Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue). The nonmovant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts. Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment"). Similarly, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for [that party]." Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998) (internal quotes omitted).

When the parties have submitted evidence of conflicting facts, however, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000). "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues."

Byrd v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. Sch. Bd. of Lafayette, 92 F.3d 316, 318 (5th Cir. 1996). If, however, the nonmovant's "evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

**B.   Deliberate Indifference to Serious Medical Needs**

Plaintiff claims that the County violated his rights under the Eighth and Fourteenth Amendments by ignoring his medical needs. (Pl.'s Resp. at ¶ 20.)  It is well-settled that the due process clause prohibits County officials from responding with "deliberate indifference" to the serious medical needs of a pretrial detainee. Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999); Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). In order to hold an *individual* jail official liable for denial of medical treatment, a plaintiff must show (1) "objectively that he was exposed to a substantial risk of serious harm;" (2) "that jail officials were actually aware of the risk;" and (3) "that jail officials acted or failed to act with deliberate indifference to that risk." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994)). "Deliberate indifference is an extremely high standard to meet" and encompasses only "unnecessary and wanton infliction of pain repugnant to the conscience of mankind." See, e.g., Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001); McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997).  An

official's "failure to alleviate a significant risk that [he] should have perceived, but did not is insufficient to show deliberate indifference." Domino, 239 F.3d at 756; see also Hare, 74 F.3d at 648.  It is also well-settled that negligent medical care does not constitute a valid claim under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  Rather, a prisoner's constitutional rights are violated only if "jail officials were actually aware of the risk [to the detainee], yet consciously disregarded it."  Lawson, 286 F.3d at 262; see also Self v. Crum, 439 F.3d 1227, 1231 (10th Cir. 2006).

**B.    County's Liability under § 1983**

In this case, Plaintiff has evidence that he was involved in a serious car wreck and began complaining of extreme abdominal pain while detained at the jail.  (VA at 1-2; VD at 105-06.) Plaintiff's evidence shows that he pressed the buzzer in his cell, told the guards he was "hurting real bad on [his] insides," and asked for medical attention.  (VA 1-2; VD at 105-06.)  The guards and jailors, however, ignored Plaintiff, did not call for help, and did not provide Plaintiff with any medical treatment.  (VA at 1-2.)  Finally, Plaintiff has evidence that, had he been received medical attention earlier, he might not have lost part of his colon.  (VD at 102-03.)  The Court will assume, for the purposes of this Order, that Plaintiff's evidence is sufficient to support a

deliberate indifference claim against the *individual County officers* who refused him medical treatment. Plaintiff, however, did not sue the individual County officers who he claims ignored his pleas for help. Rather, Plaintiff sued only the County itself.

Although a city or county may be held liable for constitutional violations under § 1983, it cannot be held liable solely because it employs a tortfeasor. <u>Monell v. Department of Soc. Serv. of the City of New York</u>, 436 U.S. 658, 691 (1978). That is, a municipality cannot be held liable on a *respondeat superior* basis. <u>Id</u>. at 694; <u>see</u> <u>also</u> <u>Pineda v. City of Houston</u>, 291 F.3d 325, 328 (5th Cir. 2002). Rather, "§ 1983 permits recovery only when it can be fairly said that the [county] itself is the wrongdoer." <u>Gonzalez v. Ysleta Indep. Sch. Dist.</u>, 996 F.2d 745, 755 (5th Cir. 1993) (quoting <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 122 (1992)). Courts have held that:

> A municipality is liable under § 1983 only if three requirements are met. First, the municipality must have an official policy, practice, or custom which could subject it to § 1983 liability. Second, the official policy must be linked to the constitutional violation. Finally, the official policy must reflect the municipality's deliberate indifference to that injury.

<u>Lawson</u>, 286 F.3d at 263. An "official policy" for the purposes of holding a municipality liable under § 1983 may include a "persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute

a custom that fairly represents municipal policy." Pineda, 291 F.3d at 328 (citing Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984)). In other words, a plaintiff must present evidence showing "persistent, often repeated constitutional violations" by county employees in order to hold a county liable under § 1983. Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995); see also Pineda, 291 F.3d at 329 (stating that the constitutional violations must be "persistent and widespread"). "Isolated unconstitutional actions by municipal employees will almost never trigger liability." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (citing Bennett v. City of Slidell, 728 F.2d 762, 768 n. 3 (5th Cir. 1984)). Furthermore, even if such a custom is shown, a plaintiff must also demonstrate "[a]ctual or constructive knowledge of such custom . . . attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003) (citing Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984)). Only if these requirements are met can a county be held liable for a constitutional violation under § 1983.

In this case, Plaintiff has absolutely no evidence that the County had a "policy" of ignoring and refusing to treat detainees who complained of medical problems, nor does Plaintiff have any evidence that the County was aware of persistent and widespread denial of medical care by its officers. For example, Plaintiff has

-10-

not provided evidence of any other instances where County officials exhibited deliberate indifference to the serious medical needs of inmates. In fact, Plaintiff, at his deposition, explicitly stated that he did not have such evidence:

> **Q.** . . . Do you have any evidence at all . . . that shows that the Jim Wells County Jail has [a] kind of practice of ignoring the medical needs of the people in its jail?
>
> **A.** No.

(VD at 60.) Moreover, Plaintiff does not have any evidence showing that the County was on notice of persistent constitutional violations by its officers. See Pineda, 291 F.3d at 330 (stating that knowledge may be shown by such means as "discussions at council meetings," "prolonged public discussion, or of a high degree of publicity"). Without any evidence of a County policy or custom of violating constitutional rights, Plaintiff cannot hold the County liable under § 1983.

Plaintiff's only argument in favor of County liability is that the County's existing policies regarding medical treatment for detainees were "completely inadequate to determine internal injuries such as hemorrhaging or internal damage." (Pl.'s Resp. at 16.) Additionally, Plaintiff contends that the County policies were also inadequate by failing to require a night-shift nurse or doctor at the jail. (Pl.'s Resp. at 17.) Where a plaintiff seeks to hold a county liable based on its failure to adopt certain policies, however, the plaintiff must show that the county's

existing policies are "obviously inadequate" such that the county was aware that the likely consequences of not adopting further policies will be a deprivation of constitutional rights. Rhyne v. Henderson County, 973 F.2d 386, 392 (5th Cir. 1992); see also Jacobs v. West Feliciana Sheriff's Dept., 228 F.3d 388, 396 (5th Cir. 2000) (noting that "the county policies did not exhibit deliberate indifference because there was no evidence that those policies were 'obviously inadequate'"). Plaintiff has failed to meet this burden. There is no evidence that the County's policies regarding medical treatment were in any way inadequate or likely to cause deprivations of constitutional rights. Rather, the undisputed evidence shows that the County does have a policy that provides for emergency medical treatment for detainees:

> Emergency Medical Service. In the event of medical emergency the jailer in charge, who first becomes aware of the event will notify the ambulance service who will decide if the emergency can be handled in place, through the county doctor or at Alice Regional Hospital in Alice, TX. Medical emergency is any condition of an inmate that is beyond the immediate ability of the Capt./Sgt. to diagnose and take corrective action, for instance; coma, unconsciousness, heavy or severe bleeding, excruciating pain, bizarre behavior, etc.

(DEX 4(A).) Captain Sandra Salas, the Jail Administrator for Jim Wells County, elaborated on this policy by stating that "[i]f an inmate fell ill or was seeking medical attention at any . . . time of day, we would call EMS and have the inmate either taken to the hospital or clinic for further care." (DEX 3 at 1-2.) Captain Salas also testified that "[a]ll jailers were instructed to report

any illness or injury immediately to their supervisor and to call an ambulance or doctor in case an inmate was injured or sick. Under no circumstances was a jailer allowed to ignore medical needs of an inmate." (DEX 3 at 1-2.) Finally, the County's policies also required jailers to conduct a medical assessment of inmates at booking, and gave inmates an opportunity to raise "any other medical issue that needed to be dealt with, including the arrestee's potential need to be treated before being booked into the jail and placed in a cell." (DEX at 1-2.) Because Plaintiff has no evidence that the County was on notice that its existing policies were inadequate, the County's motion for summary judgment on Plaintiff's § 1983 claim must be GRANTED.

**C.   State Law Negligence Claim**

Plaintiff's Amended Complaint also purports to assert a "claim of negligence" against the County. (Pl.'s Am. Compl. at ¶¶ 31-34.) Plaintiff's response to the motion for summary judgment, however, does not address this claim at all. It is well-settled that even a pleaded theory of recovery will be waived "[if] it [i]s not raised in opposition to a motion for summary judgment." Savers Fed. Sav. & Loan Ass'n v. Reetz, 888 F.2d 1497, 1501 (5th Cir. 1989); Mason v. Ashland Exploration, Inc., 965 F.2d 1421, 1425 (7th Cir. 1992) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered");

-13-

Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived . . . [i]f a party fails to assert a legal reason why summary judgment should not be granted"). Because Plaintiff failed to discuss his negligence claim in his response to the motion for summary judgment, his claim is waived.

Even if Plaintiff had properly raised this claim in his response, however, the County would still be entitled to summary judgment. Under Texas law, a "county is a governmental unit protected by the doctrine of sovereign immunity." Travis County v. Pelzel & Associates, Inc., 77 S.W.3d 246, 248 (Tex. 2002); see also Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). Absent legislative consent or a waiver of immunity, a county and its officials are protected from suit. See, e.g., Texas Dept. of Parks and Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004). One such legislative waiver appears in the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code § 101.025 (stating that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter"). The waiver of immunity contained in the Texas is not absolute, rather the Act waives sovereign immunity "only in certain circumstances." University of Texas Medical Branch at Galveston v. York, 871 S.W.2d 175, 177 (Tex. 1994) (stating also that the "Tort Claims Act did not abolish the doctrine of sovereign immunity"). In particular, the Act waives immunity *only* for:

-14-

>    (1)   . . . personal injury [or] death proximately caused
>          by the . . . the negligence of an employee acting
>          within his scope of employment if
>
>          (A)   the . . . personal injury, or death arises
>                from the operation or use of a motor-driven
>                vehicle or motor-driven equipment; and
>
>          (B)   the employee would be personally liable to the
>                claimant according to Texas law; and
>
>    (2)   personal injury and death so caused by a condition
>          or use of tangible personal or real property if the
>          governmental unit would, were it a private person,
>          be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code § 101.021.  Because the injuries Plaintiff claims in this case were not "caused by a condition or use of tangible personal or real property," and do not arise out of a county employee's negligent use of a motor vehicle, Plaintiff cannot invoke the waiver of immunity contained in the Texas Tort claims act.  Therefore, the County is immune from Plaintiff's negligence claim and summary judgment on that claim is GRANTED.

**IV.  CONCLUSION**

For the reasons discussed above, the County's Motion for Summary Judgement (D.E. 31) is hereby GRANTED.

SIGNED and ENTERED this 21st day of August, 2006.

_____
Janis Graham Jack
United States District Judge